IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| ROBIN COLLIER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) CIVIL ACTION NO. 15-498-CG-M |
| | ) |
| CHARELLE BRONSON, | ) |
| | ) |
| Defendant. | ) |

## ORDER

A bench trial was held and testimony was taken and other evidence was received in this matter on December 6, 2016. For the reasons discussed below, the Court finds that Plaintiff should be awarded a total of $50,000.00 in compensatory damages on her negligence claim, but that judgment should be entered in favor of Defendant on Plaintiff's wantonness claim.

## FACTS

This action arises from an automobile accident that occurred on May 10, 2014, in Baldwin County, Alabama, on Orange Beach Boulevard at its intersection with Marina Road. It is undisputed that Plaintiff Robin Collier was sitting in her car, stopped in the southbound lane at the Marina Road traffic light when a southbound vehicle driven by Defendant Charelle Bronson collided with the rear of Plaintiff's vehicle. As a result of the accident both vehicles were declared total losses and Plaintiff claims she suffered permanent physical and emotional injuries.

The Defendant Charelle Bronson testified at trial that she was in Alabama on vacation with friends at the time of the accident. Bronson had driven to Alabama the day before and had been up late the night before the accident. According to Bronson, on the day of the accident she was the designated driver and she did not have anything to drink that day. Bronson and three friends were listening to music in the car and the music selection was coming from Bronson's phone as she was driving down Orange Beach Boulevard. Bronson testified that she did not see Plaintiff's car in front of her until she was three or four car lengths from Plaintiff's car. Bronson reports that the person in the front passenger seat wanted to change the song they were listening to and asked Bronson for her password to unlock her phone and change the music. According to Bronson, she turned her head in the direction of the passenger and told her friend the password and when she turned back toward the road she saw Plaintiff's car, but it was too late to avoid it. Bronson testified at her deposition that she could not have been going much over 45 mph, but at trial she admits that she is not sure how fast she was going and she concedes that she was distracted by her friend asking for the password to unlock her cell phone. Bronson maintains that her friend had Bronson's cell phone at the time of the accident.

There was evidence presented regarding cell phone records from Bronson's phone on the day of the accident but there was some confusion regarding whether the times stated in the records were accurate due to the records listing the times under the heading "Conn. Time (UTC)." (P. Ex. 25). Counsel had assumed that the

times listed were listed as the local, Central Standard times. However, when questioned about the heading on the records, counsel was unsure, and though counsel later stated that he still understood the times to be the same as local time, the Court is not persuaded[1]. Even if counsel was correct that the records showed the local central standard time, the Court finds that the records and Bronson's responses to questions regarding her phone use did not show that she was using the phone at the time of the accident. The most that the records demonstrated (if the times listed were the same as local time) was that calls were made to Bronson's phone around that time. There was no evidence that Bronson had placed a phone call or had answered a phone call or texted anyone around the same time as the accident.

After the accident, police officers arrived. They talked to Bronson but reportedly did not charge her with having committed any offense and did not test her for alcohol or even ask her if she had been drinking. One of Bronson's friends was passed out in the back seat of Bronson's car.

Carol Ewing testified that she witnessed the accident. Ewing testified that the day of the accident was a beautiful day and that it was not dark yet when the

---

[1] Rule 201 of the Federal Rules of Evidence permits a court to take judicial notice of a fact that is not subject to reasonable dispute at any point in the proceedings. Fed.R. Evid. 201(b), (d). In *United States v. Michael*, 664 Fed. Appx. 32, 36 (2d Cir. 2016), the Second Circuit Court of Appeals held that taking judicial notice of the relationship between UTC and Eastern Time was not subject to reasonable dispute and therefore not an abuse of discretion. Here, the Court takes judicial notice that UTC, or Coordinated Universal Time, is the primary time standard by which the world regulates clocks and time. Local time in the Central Time zone is six hours behind UTC during winter but five hours behind while daylight savings time is observed.

accident occurred. Ewing was travelling North on Orange Beach Boulevard when she reports she saw Bronson's car traveling very fast - at least 60 mph. According to Ewing, she was "back a ways" from the intersection and heading in the opposite direction when she saw Bronson's car coming over the hill or rise in the distance. When she saw Bronson's car she reports that she immediately knew there was going to be an accident, so she pulled to the side, into the turn lane and stopped her car. Ewing was stopped south of the accident and immediately after the accident she moved her car farther to the north - closer to where Plaintiff' Robin Collier's car ended up after the accident occurred. Collier's car travelled south across the Marina Road intersection when it was hit by Bronson's car. Ewing got out of her car and checked on the people in both cars involved in the accident. According to Ewing, Bronson and her friends were searching for Bronson's phone and Bronson had slurred speech and appeared impaired. Ewing reported that Bronson said the phone flew out of her hand.

Plaintiff's husband, John Collier, testified at trial. Mr. Collier took a video of the view someone driving south on Orange Beach Boulevard would have as they approached the Marina Road intersection. In the video he estimates he was going about 45 miles per hour and it took approximately 14 seconds to go the distance from the hill or rise to where the collision occurred.

Plaintiff Robin Collier testified that she was nauseated and had a bruise on her forehead but she did not see a doctor or go to the hospital the day of the accident. The next morning she had a headache and was sore. That day while she

4

was driving with her daughter, Plaintiff started experiencing problems and her daughter insisted she go to the hospital. Plaintiff started repeating things she had said just moments before, had trouble with numbers and seemed to be having mental issues of some kind.  Plaintiff complained of stiffness in her neck and said she had a headache. At the hospital they performed a CT scan but they did not find anything wrong and told her to see an orthopedic physician if she kept hurting. She went to go see her general practitioner, Dr. Ross Bishop, to get a referral to a physical therapist. She also went to see an orthopedist, Dr. Harcourt, on May 23rd and again on June 4 because of her neck pain and pain down her arm.  On August 8, 2014 Dr. Harcourt told Plaintiff that her MRI showed that the accident had aggravated her underlying degenerative cervical spine.  Plaintiff's spine had not bothered her before and she did not know until then that she had a degenerative cervical spine.  Plaintiff saw Dr. Harcourt a total of 4 times, but did not go back to him after that because she did not think he was going to be able to do anything to help her condition. Plaintiff went to see Dr. Ross Bishop on August 19, 2014 to get a referral to try acupuncture. She continued to be treated with acupuncture and also started getting massages regularly.  She still gets a massage every two weeks. Plaintiff went to see a neurologist, Dr. Kasmia in October 2014. Dr. Kasmia's notes indicate that Plaintiff was working full time without any difficulties and that she had developed headaches after the accident, but that they have improved almost back to base line. Plaintiff never went back to Dr. Kasmia.

Plaintiff works as a hairdresser and has her own shop. She is 55 years old as

of January 2017 and has worked for 20 years to build her clientele to about 125 customers. She usually works four or five days a week. She has not missed any days of work, but after the accident she would be tired and sore at the end of the day and especially at the end of the week. As a hairdresser she has to hold her arms up all the time. She puts ice on her shoulders every night. When she sleeps on her side she experiences pain and her fingers go to sleep, but she has learned to adjust her arm to alleviate the problem. She has also learned to do stretches that relieve the pain and tension.  Plaintiff testified that the memory of the wreck still affects her. She remembers the blood-curdling scream of her daughter, Molly Harbison, right after the impact. However she never pursued any kind of treatment for emotional problems and did not go to a psychiatrist, psychologist, counselor, or other mental health specialist.  She occasionally took Tramadol for pain, but that made her feel disoriented or lightheaded and she stopped using it. Now she takes Mobic in the mornings and sometimes substitutes with ibuprofen because that is not as hard on her stomach. Plaintiff also takes the muscle relaxer Flexeril three or four times a week.  Plaintiff sees Dr. Ross Bishop every three months to get her prescriptions for Flexeril and Mobic.

Plaintiff's husband testified that after the accident, Plaintiff was sometimes very emotional and would have flashbacks of the accident. He said Plaintiff would often repeat statements she made a few days or a couple hours earlier. He reported that she was in physical pain from her neck and her back and took medications for pain and also used heating pads and ice packs. He said they have tried to exercise

or go hiking together, but she always had to stop. As a result they were not as active as they used to be.

Plaintiff's daughter, Molly Harbison, testified that Plaintiff is still easily upset and sometimes "almost a little bit confused." Harbison reported that Plaintiff is exhausted and in pain after a workday from holding her arms up to cut and blow dry hair and standing on her feet all day. Before she could do that and now it is very difficult. Harbison testified that she used to exercise with her mother when she would come home – they would run circuits – and they do not do that anymore. Harbison said her mother is generally not as lively or robust as she used to be.

Plaintiff testified that the pain she experiences does not prevent her from doing anything she used to do. She has resumed all the activities she used to do and is even trying to start back jogging. She still does the same activities, just not as frequently and she experiences pain and soreness depending on her workload and activities. She now has someone come to her house to do the heavy cleaning every two or three weeks because it aggravates her back for her to do it.

Plaintiff kept a calendar in which she sometimes wrote notes about how she was feeling. She sometimes reported that she was feeling good, her neck was getting better or that she felt like she was back to her old self, but Plaintiff says that although she sometimes feels better and tries to stay optimistic, she is not back to her old self. The pain still comes and goes. According to Dr. Ross Bishop, in the future Plaintiff will probably have persistent neck pain that could get worse from the aging process and the wreck and its possible she could need surgery at some

point. (Pl. Ex. 28, pp. 32-34).

## DISCUSSION

### I. Negligence Claim

In order to prevail on a negligence claim, a plaintiff must prove four elements: duty, breach, causation, and damages. *Sessions v. Nonnenmann*, 842 So. 2d 649, 651 (Ala. 2002). "[A] vehicle operator is under a duty to use reasonable care in operating the vehicle," *Jones v. Baltazar*, 658 So. 2d 420, 421 (Ala. 1995), and the parties in this case do not dispute that Defendant breached that duty and that the breach resulted in injury to Plaintiff. The only dispute with regard to Plaintiff's negligence claim is the amount of damages that should be awarded.

"Where liability is established, the assessment [of damages] must include an amount at least as high as the uncontradicted special damages, as well as a reasonable amount as compensation for pain and suffering." *Bailey v. Bean*, 812 So. 2d 1241, 1242–43 (Ala. Civ. App. 2001) (citations omitted). " '[I]f there are special or compensatory damages and proof of some 'pain and suffering,' then there must be an award in excess of the special damages.' " *Id.* at 1243 (citations omitted).

In the instant case, Plaintiff seeks an award of $100,000 for compensatory damage. (Doc. 34, p. 7). Plaintiff presented evidence that her medical bills from the accident amount to approximately $10,000. Plaintiff has not shown a loss of earnings or lost wages, but claims her injury is permanent and that she has and will suffer future pain and mental anguish from her injuries. Plaintiff has a life

expectancy of about 27 years. (*See* Pl. Ex. 23 – mortality table). Plaintiff sates that she continues to get massages every other week for treatment at a cost of $150 per month, which would amount to $48,000 if she continued with that treatment for 27 years.

Defendant concedes that Plaintiff was injured and does not dispute the $10,000 claimed for medical expenses, but contends that she has improved considerably and is able to do all the things she used to do. Defendant points out that Plaintiff only saw a physician for a problem related to this accident eight times in approximately two and a half years. She has seen a specialist and a neurologist, but now only sees her general practitioner to have her medications monitored. Plaintiff was also found to have an underlying degenerative cervical spine, which was aggravated by the accident. Her condition would have deteriorated as she aged and would be expected to continue to deteriorate as she ages even if she had not been injured in the accident. Defendant contends that Plaintiff's decline in ability to work long hours, exercise and do other things at the same intensity or vigor as she used to is a normal result of her aging with a degenerative cervical spine.

The Court after review of all of the evidence concludes that Plaintiff was indeed injured, but that she has substantially improved and is not likely to need substantial medical treatment in the future as a result of the accident. Additionally, although the Court believes Plaintiff suffered pain and was distressed by the whole incident, her mental suffering did not rise to the level of requiring any kind of formal professional treatment. After considering the testimony and evidence

9

submitted, the Court finds that Plaintiff should be awarded a total of $50,000.00 in compensatory damages consisting of $10,000 for past medical costs and $40,000 for pain and suffering and future medical costs.

## II. Wantonness Claim

Plaintiff also asserts a claim of wantonness. "To establish wantonness, the plaintiff must prove that the defendant, with reckless indifference to the consequences, consciously and intentionally did some wrongful act or omitted some known duty." *Lemley v. Wilson*, 178 So.3d 834, 841-42 (Ala. 2015) (citation omitted). In the instant case, Plaintiff contends that the Defendant wantonly operated her vehicle because she was using her cell phone at the time of the accident and/or she had been drinking and was impaired.

The Court notes that under Alabama law it is illegal to write or send a text while operating a motor vehicle. ALA. CODE § 32-5A-350.[2] However,

> there is no Alabama statute that expressly addresses talking on a cell phone while driving, *see generally* 1975 Ala. Code §§ 32-5A-1 to -352 ("Rules of the Road") (containing in the traffic-law compilation no express prohibition of talking on cell phone while driving), common sense dictates that doing so could result in culpability if it interferes with a driver's duty to use "reasonable care" not to cause harm to others using the public roadway, *Jones v. Baltazar*, 658 So. 2d 420, 421 (Ala. 1995), with the term reasonable care defined as what "a reasonably prudent person would not do in a similar situation" or what "a reasonably prudent person would have done in a similar situation." Alabama Pattern Jury Instructions: Civil § 28.01.

*Davis v. Automatic Food Serv., Inc.*, 2015 WL 7455544, at *2 (M.D. Ala. Nov. 23,

---

[2] ALA. CODE § 32-5A-350 states the following: "A person may not operate a motor vehicle on a public road, street, or highway in Alabama while using a wireless telecommunication device to write, send, or read a text-based communication."

10

2015). Nor is there an Alabama statute that expressly addresses what actions are prohibited or appropriate when using a cell phone to operate music while driving. Moreover, for a finding of wantonness, there must be more than merely a failure to use "reasonable care" in operating a vehicle.

> Wantonness can result from (1) "conscious disregard," 1975 Ala. Code § 6-11-20(b)(3), or (2) "reckless indifference," *Martin v. Arnold*, 643 So. 2d 564, 567 (Ala. 1994). According to the Alabama Supreme Court, "Wantonness is not merely a higher degree of culpability than negligence. Negligence and wantonness, plainly and simply, are qualitatively different tort concepts of actionable culpability." Tolbert v. Tolbert, 903 So. 2d 103, 114 (Ala. 2004) (internal citations omitted). While negligent conduct is characterized by "inattention, thoughtlessness, heedlessness," and "a lack of due care," *Monroe v. Brown*, 307 F. Supp. 2d 1268, 1271 (M.D. Ala. 2004) (Thompson, J.), wantonness is "the conscious doing of some act or the omission of some duty while knowing of the existing conditions <u>and</u> being conscious that, from doing or omitting to do an act, injury will likely or probably result," *Ex parte Essary*, 992 So. 2d 5, 9 (Ala. 2007) (emphasis in original). A factfinder may find wantonness based on recklessness if the conduct is "so inherently reckless that it would signal the kind of depravity consistent with disregard of instincts of safety and self-preservation." *Jinright v. Werner Enterprises, Inc.*, 607 F. Supp. 2d 1274, 1276-1277 (M.D. Ala. 2009) (Thompson, J.) (internal quotations omitted).

*Davis*, 2015 WL 7455544, at *2–3. "Wantonness requires more than a mere showing of some form of inadvertence on the part of the driver; it requires a showing of some degree of conscious culpability." *Williams v. Werner Enterprises*, 2013 WL 6665385, at *3 (N.D. Ala. Dec. 17, 2013) (quoting *Scott v. Villegas*, 723 So.2d 642, 642 (Ala.1998)). "The actor's knowledge may be proved by showing circumstances from which the fact of knowledge is a reasonable inference; it need not be proved by direct evidence." *Id.* (quoting *Scott*, 723 So.2d at 642).

In the instant case, the Court finds from the testimony and other evidence

11

that the Defendant was not personally using her phone at the time of the accident, but had turned to tell her passenger the password for her phone immediately prior to the accident. Plaintiff was distracted while driving, but the Court finds the evidence does not show that she was using her phone at the time to read or send a text, to talk to someone on the phone, or to key in a password. Defendant testified that her passenger had Defendant's phone at the time of the accident and no one witnessed Defendant using the phone. As mentioned previously, the Court finds that the cell phone records do not demonstrate any inconsistency in the Defendant's account. The Court is not convinced by Ms. Ewing's report that Defendant said the phone flew out of her hand. As will be explained further below, the Court did not find Ewing's testimony to be credible.

The Court also finds that Plaintiff was not impaired at the time of the accident. Although Ms. Ewing testified that Defendant had slurred speech and appeared impaired immediately after the accident, the Court finds Ewing's account of the events surrounding the accident not credible. All of Ewing's testimony regarding the accident was dubious. Ewing claimed to see the Defendant's car coming from the opposite direction from a great distance away and to have immediately divined that there would be an accident. The Court does not believe that Ms. Ewing could have seen and appreciated the circumstances she claims to have discerned from where she was located prior to the accident. Ewing's testimony regarding the Defendant's reported impairment are contrary to the other facts and circumstances presented at trial. There is no evidence that the officers who

investigated the accident had any inclination that Defendant was impaired. Although they spoke with Defendant at length after the accident they apparently found no reason to ask her if she had been drinking or to ask her to submit to a breathalyzer or field sobriety test. The officers did not detain Defendant or charge her with any offense or infraction. Defendant testified that she had not had anything to drink and that she was the designated driver. After considering all of the evidence, the Court concludes that Defendant was not intoxicated or otherwise impaired at the time of the accident.

There are no "exacerbating circumstance," such as the Defendant "talking on h[er] phone or texting," that could support a finding of wantonness. *See Davis*, 2015 WL 7455544, at*3 (finding sufficient evidence in that case for jury to find exacerbating circumstances) (quoting *Craft v. Triumph Logistics, Inc.*, 2015 WL 1565003, at *3 (M.D. Ala. April 8, 2015). Here, the evidence does not establish something more than mere inattentiveness or violation of road rules. *See Davis*, 2015 WL 7455544, at*3 (citing *Craft*, 2015 WL 1565003, at *3). The Defendant was in conversation with other occupants of the car and glanced away from the road to tell another passenger the password to her phone. Such conduct may show inadvertence, but does not measure up to wantonness. See e.g. George v. Champion Ins. Co., 591 So.2d 852 (Ala.1991) (finding summary judgment in favor of defendant proper where the driver "glanced back in conversation" and "[w]hen she looked forward, the traffic light was red" and "she tried to put her foot on the brake pedal, but missed and hit the clutch pedal.").

13

## CONCLUSION

For the reasons stated above, Judgment shall be entered in favor of Plaintiff, Robin Collier, on her negligence claim and Plaintiff is awarded a total of $50,000.00 compensatory damages. Additionally, judgment shall be entered in favor of Defendant, Charelle Bronson, as to Plaintiff's wantonness claim.

**DONE** and **ORDERED** this 20th day of April, 2017.

/s/ Callie V. S. Granade
SENIOR UNITED STATES DISTRICT JUDGE